Not For Publication

UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - - - - - - - - - - -
                                    )
IN RE:                              )        CASE NO.        06-32226 (LMW)
                                    )
   BETH A. HACKETT,                 )        CHAPTER         7
                                    )
            DEBTOR.                 )
- - - - - - - - - - - - - - - - - - - - - - - - - - - -
   PHILIP M. MONDO,                 )        ADV. PRO. NO.   07-3025
                                    )
            PLAINTIFF               )        DOC. I.D. NO.   1
                                    )
      vs.                           )
                                    )
   BETH A. HACKETT,                 )
                                    )
            DEFENDANT.              )
- - - - - - - - - - - - - - - - - - - - - - - - - - - -

## APPEARANCES

Philip M. Mondo                          Plaintiff, *pro se*
672 Jewett Avenue
Bridgeport, CT  06606


Beth A. Hackett                          Debtor and Defendant, *pro se*[1]
653 Garfield Avenue
Bridgeport, CT  06606

## MEMORANDUM OF DECISION

Lorraine Murphy Weil, United States Bankruptcy Judge

---

[1]     The Debtor is represented in the chapter 7 case but not in this adversary proceeding.

The matter before the court is the above-referenced plaintiff's (the "Plaintiff") complaint (A.P. Doc. I.D. No. 1, the "Complaint")[2] pursuant to which the Plaintiff seeks a determination that certain alleged debts (the "Alleged Debts") due from the above-referenced debtor (the "Debtor") were not discharged in this chapter 7 case pursuant to 11 U.S.C. §§ 523(a)(2) and/or 523(a)(6). The court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and that certain Order dated September 21, 1984 of this District (Daly, C.J.).[3]

## I.   PROCEDURAL BACKGROUND

### A.   The Chapter 7 Case

This case was commenced by the Debtor pursuant to a voluntary petition filed with the court on December 12, 2006. (*See* Case Doc. I.D. No. 1.) A complete set of schedules (*see id.*, collectively, the "Original Schedules") was filed along with the petition. An amended Schedule F (Creditors Holding Unsecured Nonpriority Claims) was filed on December 18, 2007. (*See* Case Doc. I.D. No. 19, the "Amended Schedule F.") A report of no distribution was filed by the chapter 7 trustee on January 18, 2007. (*See* Case Doc. I.D. No. 13.) On March 28, 2007, the Debtor was granted her chapter 7 discharge. (*See* Case Doc. I.D. No. 16.)

### B.   The Adversary Proceeding

The Plaintiff filed the Complaint on March 15, 2007. (*See* A.P. Doc. I.D. No. 1.) The Complaint seeks a determination that the Alleged Debts are nondischargeable under 11 U.S.C.

---

[2]      Citations herein to the docket of this adversary proceeding are in the following form: "A.P. Doc. I.D. No. ___." Citations herein to the docket of this chapter 7 case are in the following form: "Case Doc. I.D. No. ___." The Complaint is set forth in letter form. The Plaintiff is *pro se* and the court has liberally construed the Complaint.

[3]      That order referred to the "Bankruptcy Judges for this District" *inter alia* "all proceedings arising under Title 11, U.S.C., or arising in . . . a case under Title 11, U.S.C. . . . ."

§§ 523(a)(2) and/or 523(a)(6).  The Debtor filed her answer to the Complaint on August 3, 2007, denying the substantive allegations and raising certain "Special Defenses."  (*See* A.P. Doc. I.D. No. 20.)  A trial (the "Trial") on the Complaint was held on December 3, 2007.[4]  The Plaintiff testified for himself at the Trial and introduced no documentary evidence into the record at the Trial.  The Debtor produced three witnesses: herself, Betty Kenney (the Debtor's mother); and Nora Jean Hackett (the Debtor's sister).[5]  The Debtor also introduced documentary evidence into the Trial record.[6]  At the conclusion of the Trial, the court issued a partial ruling (the "Partial Ruling") and took the remainder of the matter under advisement subject to post-Trial supplementation of the record by the Plaintiff.  In accordance with the court's direction at the Trial (*see* Transcript at 52), the Plaintiff timely supplemented the record with a copy of a purported "agreement" in respect of the Alleged Debts.  (*See* attachment to A.P. Doc. I.D. No. 28, the "Document.")  Also purportedly in accordance with the court's direction at the Trial (*see* Transcript at 53-54, 57), the Debtor filed an objection to the Document.  (*See* Doc. A.P. Doc. I.D. No. 30.)  That objection concedes that the Document is a true and correct copy of the document it purports to be but alleges that the Document was signed by the Debtor under duress.  (*See* A.P. Doc. I.D. No. 30.)

The matter now is ripe for decision.

---

[4]	A transcript (the "Transcript") of the Trial proceedings appears in the record as Doc. I.D. No. 29.  The Plaintiff (who is not an attorney) was assisted at the Trial by his father who is not an attorney.

[5]	The Debtor's mother and sister also assisted the Debtor at the Trial.  Neither are attorneys (nor is the Debtor).

[6]	References herein to those exhibits appear in the following form:  "Exh. __."

## II.   FACTS

Both the Debtor and the Plaintiff appear to be in their early thirties.  From about May of 1995 to about September of 2003 the Plaintiff and the Debtor were "steady" dating (apparently in an exclusive relationship although they did not live together).  (*See* Transcript at 6, 13-14 (testimony of the Plaintiff).)  It is undisputed that, in or around May of 2002, the Plaintiff lent the Debtor about $3,100 for her to pay off credit card debts.[7]  It also is undisputed that, in or around September of 2002, the Plaintiff partially funded the Debtor's purchase of a used 2001 Nissan Sentra automobile (the "Auto Purchase Transaction").[8]  What is disputed is the character of the Plaintiff's funding of that purchase.  The Plaintiff contends that it was a loan, intended to be secured.  The Debtor contends that it was an unconditional gift.

The Plaintiff testified that at the inception of the Auto Purchase Transaction he had the following alleged interchange with the Debtor:

> At the dealership I looked you straight in the eye and before I . . . gave over the $5,000.00, and I asked you, "You are going to pay me back; right?"
>
> And you looked me straight in the eye and you agreed.  So, I figured fine.  So, I gave the deposit . . . to the dealer . . . .

(Transcript at 14:19 – 15:1 (testimony of the Plaintiff).)  The Plaintiff maintains that the Debtor also verbally agreed to register the vehicle in both their names as "security" for the "loan" although he did not bring that alleged agreement up at the dealership because it would have been too

---

[7]   That loan hereafter is referred to as the "Credit Card Loan."  It is conceded that there never was any collateral for the Credit Card Loan.

[8]   The Plaintiff funded about $5,100 towards that purchase.  The Debtor apparently used that funding as a down payment and financed the remainder pursuant to a commercial loan.  (*See* Original Schedules (Schedule D.  Creditors Holding Secured Claims) (noting a secured "automobile loan" in the amount of $7,780.00 with respect to the subject vehicle).)  At least as of the petition date the Debtor still had sole title to the vehicle.

"complicat[ed]."  (Transcript at 6:21-24, 9:15-16, 12:3-5 (testimony of the Plaintiff).)  The Plaintiff

alleges that the Debtor never intended to perform either alleged agreement.  The Debtor describes

the Auto Purchase Transaction differently and testified that the Alleged Debt in respect of the Auto

Purchase Transaction was an unconditional gift rather than a loan:

> I interpret the auto loan as a gift because you [*i.e.,* the Plaintiff] were telling me,
> "Let's go and get you a car.  I don't want you driving this car any more.  I'm going
> to help you out.  I am going to do this for you, because I want to."

(Transcript at 45:6-9 (testimony of the Debtor).)[9]

As of the fall of 2002, the Debtor had not made any payments to the Plaintiff either on the

Credit Card Loan or otherwise.  Apparently feeling uncomfortable about the foregoing, in or about

early 2003, at the Plaintiff's insistence the Debtor (and he) signed the following "Agreement" (*i.e.,*

the Document which the Plaintiff had prepared):

> **THIS AGREEMENT** dated as of May 8, 2002 between **Beth A. Hackett**, of 653
> Garfield Avenue (the "1st Party") and **Philip M. Mondo**, of 24 Ashton St. (the "2nd
> Party").
>
> **IN CONSIDERATION** of the mutual covenants and conditions hereinafter set forth
> and for other good and valuable consideration, the receipt and sufficiency of which
> is hereby acknowledged, the parties agree as follows:
>
> 1.    Philip M. Mondo loaned $8100.00 (eight thousand, one hundred
>       dollars)[10] to Beth A. Hackett.

---

[9]    Shortly after the closing of the Auto Purchase Transaction, the Plaintiff described his
role in the Auto Purchase Transaction in a consistent fashion to the Debtor's mother (*see* Transcript
at 21:3-9) (testimony of Betty Kenney) and never indicated to Mrs. Kenney any expectation of
repayment (*see* Testimony at 46:21 (testimony of Betty Kenney)).  The Plaintiff testified that he
made the "[non-interest bearing] loan to [the Debtor] . . . to get the monthly rate lower [from the
institutional lender]."  (Transcript at 13:19-20 (testimony of the Plaintiff).)

[10]    The $8,100 comprises the total of both Alleged Debts.  The court notes that the
Document did not provide for collateral for either of the Alleged Debts.

> 2.      In the event I am no longer living or mentally incompetent or other
> similar circumstances that prohibits me from making decisions, all
> payments of the loan will continue [sic] be made to my father.  Frank
> P. Mondo and mother, Marie A. Mondo of 24 Ashton St., Bridgeport,
> CT.  06606.

> This Agreement is [sic] sets forth the entire agreement between the parties relating
> to the subject matter hereof and stands in the place of any previous agreement,
> whether oral or in writing.  The parties agree that no amendment to this Agreement
> shall be binding upon the parties unless it is in writing and executed by both parties.

(A.P. Doc. I.D. No. 28.)[11]   The Plaintiff admits that the Debtor signed the Document in an

automobile while he was driving, that he "pleaded" with the Debtor to sign the Document and that

he "called . . . [her] a few bad names."  (Transcript at 17:12-14, 19:6-7 (testimony of the Plaintiff).)

The Debtor testified that the Plaintiff did more than "plead" with her and that she signed the

Document under duress and out of fear:

> [H]e forced me to sign . . . [the Document].  Yes, we were in a car, he was driving
> very fast, which he does not admit to.  He was threatening me.  He recently got . . .
> his pistol permit.

(Transcript at 36:13-17 (testimony of the Debtor).)   The Debtor's sister had an opportunity to

observe the Debtor at the conclusion of that automobile ride:

> I remember that day because . . . [she was] very upset.  [She was] . . . crying.  [She
> was ] . . . shaking [a]nd [she] . . . wouldn't go into it with me in detail at that time
> because Mr. Mondo was present in my house.

(Transcript at 26:24 – 27:2 (testimony of Nora Hackett).)

---

[11]      The "Agreement" is "dated as of May 8, 2002."  (*See* Document.)  However, the
Plaintiff testified that the "Agreement" was not signed until early 2003.  (*See* Transcript at 15:13-14
(testimony of the Plaintiff).)

The Debtor made a $500.00 payment to the Plaintiff on or about July 14, 2003[12] and a $100.00 payment on or about January 5, 2004.  (*See* Exhibit 1.)  "[A]t the end of January 2004 . . . [the Debtor] received [sic] summons from court that . . . [she] was being sued.  So, . . . [she] sent a [$100.00] check to . . . [the Plaintiff's] attorney on February 2, 2004 for another $100.00, but . . . [she] cease[d] payments after that because . . . [she] was being sued in the courts . . . ."  (Transcript at 32:23 – 33:2 (testimony of the Debtor).)  In July of 2004, the Plaintiff dropped the suit, hoping for a reconciliation with the Debtor.  (*See* Transcript at 33:13-19 (testimony of the Debtor); Exhibit 5 (e-mail from the Plaintiff dated July 13, 2004).)

On or about July 30, 2004, the Debtor then recommenced making periodic $100.00 payments to the Plaintiff generally on a monthly basis through July of 2005.  (*See* Exhibit 1.)  From on or about August 10, 2005 through January, 2006, the Debtor made periodic $125.00 payments to the Plaintiff generally on a monthly basis.  (*See id.*)[13]  The Debtor did not make any payments after that because she lost her job early in 2006 and remained unemployed as of the Trial.  (*See* Transcript at 31:18-19 (testimony of the Debtor).)[14]  The Plaintiff commenced a second state court suit against her in September of 2006 but that suit did not go to judgment either.  (*See* Transcript at 41:1-4 (testimony of the Debtor).)

---

[12]    The Debtor intended that payment to "cover . . . [her] until the end of the year." (Transcript at 32:20-22 (testimony of the Debtor).)

[13]    The Debtor testified that she intended all her payments ($2,775.00 in the aggregate (*see* Exhibit 1)) to be credited against the Credit Card Loan because she did not consider the Alleged Debt in respect of the Auto Purchase Transaction to be a loan.  (*See* Transcript at 32:18 (testimony of the Debtor).)

[14]    The Debtor apparently is living (at least in part) on financial contributions from her current boyfriend with whom she had been living (although as of the Trial she had temporarily moved in with her mother).  (*See* Case Doc. I.D. No. 8 (document in lieu of employee income records ); Transcript at 44:22 – 45:4 (testimony of the Debtor).)

## III.   PARTIAL RULING

As noted above, at the conclusion of the Trial, the court issued a partial decision (*i.e.,* the

Partial Ruling).  The Partial Ruling (set forth in the Transcript with the reasons therefor) was as

follows:

> a.  The Alleged Debt in respect of the Credit Card Loan was discharged in this chapter
>     7 case; and
>
> b.  Bankruptcy Code § 523(a)(6) did not apply to the Alleged Debt in respect of the Auto
>     Purchase Transaction.

(*See* Transcript at 54-56.)  The court reserved for this decision the issue of whether Bankruptcy Code

§ 523(a)(2)(A) applied to the Alleged Debt in respect of the Auto Purchase Transaction.  (*See*

Transcript at 56.)  The Partial Ruling hereby is reiterated and reaffirmed by the court.

## IV.   BANKRUPTCY CODE § 523(a)(2)(A)

### A.   Legal Standards

Bankruptcy Code § 523(a)(2)(A) excepts from discharge "any debt— for money, property,

services, or an extension, renewal, or refinancing of credit, *to the extent obtained by*— false

pretenses, a false representation, or actual fraud . . . ."  11 U.S.C.A. § 523(a)(2)(A) (West 2008)

(emphasis added).  To prevail under Bankruptcy Code § 523(a)(2)(A), the Plaintiff must prove by

a preponderance of the evidence the following elements:  (1) the Debtor made representations;

(2) knowing them to be false; (3) with the intent and purpose of deceiving the Plaintiff; (4) upon

which representations the Plaintiff actually and justifiably relied; and (5) which proximately caused

the alleged loss or damage sustained by the Plaintiff.  *See AT&T Universal Card Services v. Mercer*

*(In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001) (*en banc*); *Rosenblit v. Kron (In re Kron)*, 240 B.R.

164, 165 (Bankr. D. Conn. 1999) (Krechevsky, J.).  Exceptions to discharge must be strictly

construed in favor of the Debtor in order to effectuate the fresh start policy of bankruptcy. *Kron*, 240 B.R. at 165. Furthermore, the "[D]ebtor's conduct must involve moral turpitude or intentional wrong; mere negligence, poor business judgment or fraud implied in law (which may exist without imputation of bad faith or immorality) is insufficient." *Id.* at 165-66 (citation and internal quotation marks omitted).

### B.    Application of Law to Facts

The court is not persuaded by the Plaintiff's testimony that the Alleged Debt in respect of the Auto Purchase Transaction originally was structured as a loan and is persuaded by the Debtor's testimony that such Alleged Debt originally was structured as an unconditional gift. Furthermore, the court is not persuaded by the Plaintiff's testimony that the Debtor "verbally agreed" to register the subject vehicle in both their names.

The Document itself is not a legally enforceable agreement because it was not supported by consideration notwithstanding the recitation of consideration contained therein.[15] On the other hand, the Document could be construed as an evidentiary admission by the Debtor that both Alleged Debts were loans. However, the court credits the Debtor's version of the circumstances under which she signed the Document (*i.e.,* that the Debtor signed the Document under duress). Accordingly, the

---

[15]    The Document is not a negotiable instrument. *Cf.* Conn. Gen. Stat. title 42a, Art. 3; *Brault v. Grayton,* No. CV054003196, 2006 WL 1738257, at *2 (Conn. Super. June 5, 2006) ("'[T]here is a presumption that every negotiable instrument has been issued for a valuable consideration . . . .'") (*quoting Molk v. Micklewright,* 151 Conn. 606 (1964)). Here, the evidence is persuasive that the Document was not supported by consideration. Moreover, there is no persuasive evidence in the record that the Plaintiff detrimentally relied on the Document for Section 523(a)(2)(A) nondischargeability purposes.

court does not find the Document to be persuasive as an evidentiary admission that the Alleged Debt

in respect of the Auto Purchase Transaction was a loan rather than a gift and finds to the contrary.[16]

## V.  **CONCLUSION**

For the reasons set forth above the court concludes that, (a) the Alleged Debt in respect of

the Auto Purchase Transaction was an unconditional gift and not a loan obligation or debt under

11 U.S.C. § 101(12), and (b) the Alleged Debt in respect of the Credit Card Loan was discharged in

this chapter 7 case.  The Plaintiff will take nothing on the Complaint.  Judgment consistent with the

foregoing will enter.

Dated: February 25, 2008                                BY THE COURT


                                                        **Lorraine Murphy Weil**
                                                        **United States Bankruptcy Judge**

---

[16]     In the Original Schedules, the Debtor listed the Alleged Debts as "[l]oan[s]" and
"contingent" debts in the aggregate amount of $6,200.00.  (*See* Case Doc. I.D. No. 1 (Schedule F.
Creditors Holding Unsecured Nonpriority Claims).  The court deems such scheduling of the Alleged
Debts to be sufficiently ambiguous to preclude the Original Schedules from constituting a judicial
admission by the Debtor in any meaningful sense.  In any event, Amended Schedule F lists the
Alleged Debts as both "contingent" *and* "disputed."  (*See* Case Doc. I.D. No. 19.)